**J. Robert TULL, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD and Administrator of the Federal Aviation Administration, Respondents.**

**No. 81–1576.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1982.

Decided May 19, 1982.

Rehearing and Rehearing En Banc Denied June 16, 1982.

Mallory V. Mayse, Columbia, Mo., for petitioner.

Robert G. Ulrich, U. S. Atty., E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., Peter J. Lynch, Federal Aviation Administration, Washington, D. C., for respondents.

Before HEANEY, BRIGHT and STEPHENSON,* Circuit Judges.

HEANEY, Circuit Judge.

Robert Tull petitions this Court to review and reverse an order of the National Transportation Safety Board (NTSB) which denied Tull a third-class medical certificate. We affirm the NTSB, without prejudice to the right of petitioner to make further evidentiary showings or to pursue alternative administrative waivers or exemptions, as indicated herein.

The petitioner has experienced progressive rheumatoid arthritis since 1963, eventually resulting in replacement of both hips and both knees with artificial joints. Treatment appears to have arrested the progression of the arthritis and, in 1978, the petitioner applied for a third-class medical certificate, a prerequisite to obtaining a private pilot's license from the FAA.[1] See 14 C.F.R. 61.103(c). Such an applicant has the burden of establishing that he meets the medical fitness requirements under 14 C.F.R. § 67.17(f)(2). See 49 C.F.R. 821.25. An FAA medical examiner denied the petitioner's application; an administrative law judge (ALJ), after a hearing, reversed and approved the application; and the NTSB reversed the ALJ, effecting a denial of the application. The issue before us is whether there is substantial evidence on the record as a whole to support the NTSB's determination that the petitioner has not carried his burden. We think there is.

The evidence before the ALJ ostensibly consisted of the testimony of the petitioner, petitioner's doctor, a flight instructor, the Administrator's doctor and various medical records. The petitioner's doctor testified that Tull's condition had improved substantially and was largely under control. He also detailed his opinion as to the degree of functional use of various of petitioner's joints and broadly classified petitioner's condition as halfway between Class II and Class III, as defined by the American Rheumatism Association.[2] The flight instructor had flown a test flight with the petitioner and essentially found him physically capable of operating a plane within private pilot standards. This test flight, however, did not include simulated emergency conditions. Pet. Br. at 14.

The Administrator's doctor, who is also a licensed pilot, testified that the petitioner was not medically fit to safely fly a plane, an opinion based largely on review of the medical records and the testimony of petitioner's doctor. Much of the testimony of the Administrator's doctor was flatly contradicted by the flight instructor's actual observations under normal flight conditions, although there is little direct evidence of ability to handle emergency conditions.

There is no doubt that the petitioner has some difficulty in terms of grip strength and in terms of strength and flexibility of certain joints. The ALJ found that the petitioner has residual limitations, but also that the testimony of petitioner's doctor and the flight instructor was more persuasive on the issue of ability to safely operate a plane. We tend to agree, but need not reach this issue because the NTSB did not make a contrary factual conclusion. The Board's decision was based on the evidence as to the petitioner's physical ability to handle emergency conditions:

> We are reluctant to conclude that petitioner is medically fit without the results of a more comprehensive flight check covering the full range of emergency conditions a pilot may encounter and is expected to successfully deal with. Therefore, we conclude on the basis of this record that petitioner has not met his burden of establishing entitlement to a medical certificate.

---

* The Honorable Roy L. Stephenson assumed senior status on April 1, 1982.

1. The record indicates that the petitioner held a commercial pilot's license at some point prior to the arthritis difficulties.

2. Class II refers to persons who can perform "adequate or normal activity, despite a handicap, discomfort or limitation of motion at one or more joints;" Class III refers to those who are "limited to little or none of the duties of usual occupation or self care." Pet.Br. at 5.

NTSB Order No. EA–1576, at 7 (March 11, 1981).

Thus, the issue is whether there was substantial evidence to support the Board's determination with respect to emergency conditions. The test flight taken here did not include simulation of such conditions, *see* Pet.Br. at 14, and there was competent testimony that such conditions might require strength, flexibility and quick reflexes to a degree more demanding than under normal flight conditions. The record as a whole does offer substantial evidence which creates doubts as to the petitioner's condition, although such doubts were largely dispelled with respect to normal flight conditions. We cannot say, however, that there is no substantial evidence on which doubts could persist as to the petitioner's ability to handle emergency conditions.

We therefore must affirm the decision of the NTSB. In doing so, we emphasize that there is no prejudice to the petitioner's right to make further evidentiary showings as to his ability to handle simulated emergency conditions. As we view the record and the order of the NTSB, a sufficient showing on this issue would then entitle the petitioner to a medical certificate, absent new issues or other evidence. There also is no prejudice to the petitioner's right to pursue alternative administrative waivers or exemptions, as indicated by the NTSB.[3]

The petition is denied and the order of the NTSB is affirmed without prejudice.

---

3. *See* NTSB Order No. EA–1576, at 7, n.15.